IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Richmond Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 3:16cr91-HEH |
| | ) | |
| WILLIAN REYNIERY MEDINA-ESCOBAR, | ) | |
| | ) | |
| a/k/a "Pollo," | ) | |
| a/k/a "Mazda," | ) | |
| | ) | |
| *Defendant.* | ) | |

## STATEMENT OF FACTS

The United States and the defendant, WILLIAN REYNIERY MEDINA-ESCOBAR ("MEDINA-ESCOBAR"), agree that had the case gone to trial the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From at least in or about 2011, and continuing until in or about March 2014, in the Eastern District of Virginia and elsewhere, and in an offense begun and committed outside the territorial jurisdiction of the United States, including Guatemala, Venezuela, Honduras, and elsewhere, the defendant WILLIAN REYNIERY MEDINA-ESCOBAR, a/k/a "Pollo," a/k/a "Mazda," whose point of entry into the United States was in the Eastern District of Virginia, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to possess with the intent to distribute and distribute a controlled substance, to wit, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, on board an aircraft registered in the United States, in violation of Title 21, United States Code, Sections 959(b), 960(b)(1)(B), and 963.

2. Starting in approximately 2011, MEDINA-ESCOBAR joined the Los Cachiros

drug trafficking organization ("Los Cachiros DTO"), a large-scale cocaine trafficking organization based in Honduras. As a member of the Los Cachiros DTO, MEDINA-ESCOBAR conspired with other members of the organization to transport cocaine from Venezuela to Honduras using United States registered aircraft.

3. It was part of the conspiracy that MEDINA-ESCOBAR agreed with Co-Conspirator #1 to inspect aircraft from sellers in Guatemala on behalf of the Los Cachiros DTO. As part of these duties, MEDINA-ESCOBAR met with the aircraft sellers, Co-Conspirators #2 and #3, and confirmed the aircraft were sufficiently altered to make long distance flights to Venezuela to pick up cocaine.

4. It was part of the conspiracy that MEDINA-ESCOBAR negotiated with Colombian sources of supply for the purchase of cocaine on behalf of Co-Conspirator #1 and the Los Cachiros DTO. As part of these duties, MEDINA-ESCOBAR met with and communicated with the sources of supply, Co-Conspirators #4-#6, and negotiated the amount of cocaine to be transported on the aircraft and the purchase price paid for by the Los Cachiros DTO.

5. It was part of the conspiracy that MEDINA-ESCOBAR agreed with Co-Conspirator #1 and other members of the conspiracy to coordinate the landing of cocaine-laden aircraft. As part of these duties, MEDINA-ESCOBAR surveilled potential clandestine landing strip sights in Honduras, checked GPS coordinates for the sites, and reported to Co-Conspirator #1 and other co-conspirators as to the suitability of these locations for the landing of cocaine-laden aircraft. In addition, MEDINA-ESCOBAR served as a radio operator who communicated with the pilots of the cocaine-laden aircraft and directed them to the clandestine strips for landing. MEDINA-ESCOBAR also communicated with co-conspirators as to the status of drug

flights and the arrival of the aircraft in Honduras.

6. In or about July 2013, a Beechcraft King Air C90 ("King Air C-90"), with United States registered tail number N92XXX was flown to Guatemala City, Guatemala, where Co-Conspirator #2 agreed to sell the aircraft to the Los Cachiros DTO.

7. Between in or about July 2013 and in or about October 2013, MEDINA-ESCOBAR negotiated the purchase of 1,025 kilograms of cocaine from Co-Conspirator #4 on behalf of the Los Cachiros DTO. The agreement reached between MEDINA-ESCOBAR and Co-Conspirator #4 was that the 1,025 kilograms of cocaine were to be transported from Apure, Venezuela, to Honduras by the Los Cachiros DTO.

8. In or about October 2013, the King Air C90 flew from Guatemala to Venezuela for the purpose of loading and transporting 1,025 kilograms of cocaine. Before the flight and while it was in the air, MEDINA-ESCOBAR assisted in the planning, logistics, and management of the flight for the transportation of cocaine. In addition, MEDINA-ESCOBAR communicated with Co-Conspirators #1-#3, as well as other co-conspirators, as to the status of the drug flights and the arrival of the aircraft in Honduras.

9. On or about October 27, 2013, the King Air C90 departed from Apure, Venezuela, and transported 1,025 kilograms of cocaine to a clandestine airstrip near Limon, Honduras. As part of the operation, MEDINA-ESCOBAR was present on the clandestine airstrip and assisted in the safe landing of the aircraft by directing the pilots to the airstrip via radio communications and directing the ground crew to light the airstrip.

10. Upon arrival in Honduras, the 1,025 kilograms of cocaine were off-loaded and placed into the custody of the Los Cachiros DTO for further redistribution and sale. After off-

loading the cocaine, the King Air C90 was destroyed by members of the Los Cachiros DTO.

11. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

12. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____
Erik S. Siebert
Peter S. Duffey
Assistant United States Attorneys

4

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, WILLIAN REYNIERY MEDINA-ESCOBAR and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Willian Reyniery Medina-Escobar
Defendant

I am defendant's attorney Ali Amirshahi. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Ali Amirshahi, Esquire
Counsel for the defendant