IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:16CR91-HEH |
| | ) | |
| WILLIAN REYNIERY MEDINA ESCOBAR, | ) | |
| a/k/a "Pollo," | ) | |
| a/k/a "Mazda," | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' POSITION ON SENTENCING**

The United States of America, through its undersigned attorneys, hereby submits its

position with respect to sentencing. The United States concurs with the Probation Officer's

determination that the defendant's Total Offense Level is 39 and that his Criminal History

Category is I. *See* PSR, Worksheet D. The defendant's applicable Guideline range is 262-327

months. *Id.* In light of the factors contained in 18 U.S.C. § 3553(a), the sentencing

recommendation of the United States, and the reasons set forth below, the United States requests

a sentence of 262 months of imprisonment.

## I.  Background

Starting in approximately 2011, Willian Reyniery Medina-Escobar ("Medina") joined the

Los Cachiros drug trafficking organization ("Los Cachiros DTO"), a large-scale cocaine

trafficking organization based in Honduras. PSR ¶ 11. As a member of the Los Cachiros DTO,

Medina conspired with other members of the organization to transport cocaine from Venezuela

to Honduras using United States registered aircraft. *Id.*

As part of the conspiracy, Medina agreed with Co-Conspirator #1 to inspect aircraft from Guatemala sellers on behalf of the Los Cachiros DTO. *Id.* This inspection process required Medina to meet with the aircraft sellers, Co-Conspirators #2 and #3, and confirm the aircraft purchased by the Los Cachiros DTO were sufficiently altered to make long distance flights to Venezuela to pick up cocaine. *Id.*

In addition, as part of the conspiracy, Medina negotiated with Colombian sources of supply for the purchase of cocaine on behalf of Co-Conspirator #1 and the Los Cachiros DTO. *Id.* These negotiation duties required Medina to meet and communicate with sources of supply, Co-Conspirators #4-#6, and discuss the amount and purchase price for the cocaine transported on the aircraft owned by the Los Cachiros DTO. *Id.*

Lastly, as part of the conspiracy, Medina agreed with Co-Conspirator #1 and other members of the DTO to coordinate the landing of cocaine-laden aircraft. *Id.* These coordination duties required Medina to surveil potential clandestine landing strip sights in Honduras, check GPS coordinates for the sites, and report to Co-Conspirator #1 and other co-conspirators as to the suitability of these locations for the landing of cocaine-laden aircraft. *Id.* For the arrival of the cocaine-laden aircraft, Medina served as a radio operator who communicated with the pilots and directed them to the clandestine strips for landing. *Id.* Also, Medina communicated with co-conspirators as to the status of drug flights and the arrival of the aircraft in Honduras. *Id.*

In or about July 2013, a Beechcraft King Air C90 ("King Air C-90"), with United States registered tail number N92XXX, was flown to Guatemala City, Guatemala, where Co-Conspirator #2 agreed to sell the aircraft to the Los Cachiros DTO. *Id.* Between July 2013 and October 2013, Medina negotiated the purchase of 1,025 kilograms of cocaine from Co-

Conspirator #4 on behalf of the Los Cachiros DTO. *Id.* The agreement reached between Medina and Co-Conspirator #4 was that the 1,025 kilograms of cocaine were to be transported from Apure, Venezuela, to Honduras by the Los Cachiros DTO. *Id.*

In October 2013, the King Air C90 flew from Guatemala to Venezuela for the purpose of loading and transporting 1,025 kilograms of cocaine. *Id.* Before the flight and while it was in the air, Medina assisted in the planning, logistics, and management of the flight for the transportation of cocaine. *Id.* In addition, Medina communicated with Co-Conspirators #1-#3, as well as other co-conspirators, as to the status of the drug flights and the arrival of the aircraft in Honduras. *Id.* On October 27, 2013, the King Air C90 departed from Apure, Venezuela, and transported 1,025 kilograms of cocaine to a clandestine airstrip near Limon, Honduras. *Id.* As part of the operation, Medina was present on the clandestine airstrip and assisted in the safe landing of the aircraft by directing the pilots to the airstrip via radio communications and instructing the ground crew to light the airstrip. *Id.* Upon arrival in Honduras, the 1,025 kilograms of cocaine were off-loaded and placed into the custody of the Los Cachiros DTO for further redistribution and sale. *Id.* After off-loading the cocaine, the King Air C90 was destroyed by members of the Los Cachiros DTO. *Id.*

On July 12, 2016, the defendant was charged in a one-count Indictment. PSR ¶ 2. On February 22, 2017, the defendant was charged in a one-count Superseding Indictment. PSR ¶ 2. The Superseding Indictment charged the defendant with Conspiracy to Possess with the Intent to Distribute and Distribute 5 Kilograms of Cocaine on a United States Registered Aircraft, in violation of 21 U.S.C. §§ 963 and 959(b) (count one). PSR ¶ 3. On March 7, 2017, defendant was arrested in Guatemala City, Guatemala. PSR ¶ 7. On December 6, 2017, the defendant

entered a plea of guilty to count one of the Superseding Indictment, with the benefit of a written plea agreement. PSR ¶ 3. Under the terms of the plea agreement, the United States agreed to recommend that (1) the defendant conspired to possess and distribute on an aircraft registered in the United States 450 kilograms or more of cocaine, for a base offense level of 38; (2) the offense involved the defendant committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, resulting in a two-point enhancement; (3) the defendant was an organizer, leader, manager, or supervisor in criminal activity, resulting in a two-point enhancement; (4) the government will file a motion with the Court indicating that the defendant assisted them by timely notification of his intent to enter a guilty plea and, as such, qualifies for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b) and (5) the United States would recommend a sentence of 262 months of imprisonment. PSR ¶ 5. This non-binding recommendation by the United States is pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The Court accepted the defendant's plea and sentencing was set for February 25, 2019.

## II.  Position on Sentencing

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> a sentencing court must consider "the nature and circumstances of
> the offense and the history and characteristics of the defendant"
> and the need "to reflect the seriousness of the offense," provide
> "just punishment," "afford adequate deterrence," "protect the
> public," and "avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty of
> similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

**A.      Nature and Circumstances of the Offenses**

Over the course of three years, Medina served as a member of one of the most powerful

drug trafficking organizations in Honduras—the Los Cachiros DTO.  As a Los Cachiros member,

Medina participated in an international drug trafficking conspiracy that used United States

registered aircraft to transport large amounts of cocaine from Venezuela to Honduras.  In one

particular flight, on October 27, 2013, Medina assisted in the movement of 1,025 kilograms of

cocaine on a United States registered aircraft.

Within the aerial side of the DTO's operations, Medina served in many roles.  First,

Medina traveled to Guatemala to inspect United States registered aircraft to be used in future

drug trafficking operations.  In this assignment, Medina oversaw aircraft alterations that allowed

the planes to fly the longer distance to Venezuela, the location for cocaine pickup.  Second, as

seen in its purchase of 1,025 kilograms, Medina served the DTO by meeting and communicating

with Colombian sources of supply to negotiate the purchase of large amounts of cocaine.  Third,

Medina assisted in the pre-planning logistics necessary to coordinate the drug-laden flights from

Venezuela to Honduras.  This planning consisted of Medina surveilling locations for clandestine

airstrips, marking landing strip locations with global positioning devices, and serving as the

communication link between pilots and the Honduran based traffickers.  Fourth, Medina

supported the arrival of cocaine-laden flights from Venezuela, such as the King Air C-90 transporting 1,025 kilograms of cocaine, by handling radio communications between the ground and aircraft pilots, preparing the runaway, and directing aircraft to the appropriate landing areas. In all these roles, Medina's management provided a vital part in the furtherance of a large scale DTO's aerial cocaine trafficking operations.

As a key figure involved in a drug trafficking conspiracy to transport and distribute 1,025 kilograms of cocaine, the nature and circumstances in this case warrant a sentence of 262 months.

**B.**     **History and Characteristics of the Defendant**

The defendant is 33 years old, with no prior criminal record. PSR ¶¶ 30-32. Per the Probation Officer's calculations, the defendant is in Criminal History Category I. PSR, Part D. The defendant has lived the majority of his life in Honduras, only moving to Guatemala after a 2016 assassination attempt on his life by the Los Cachiros DTO. PSR ¶ 46. On March 7, 2017, Medina was arrested in Guatemala City, Guatemala, and on September 27, 2017, he was extradited to the United States to face the present drug trafficking charges. PSR ¶ 7. The defendant has a 13-year-old son. PSR ¶ 43. The defendant reports good health and no history of mental or emotional problems. PSR ¶¶ 49-50. The defendant graduated high school in Honduras. PSR ¶ 52. The defendant has a lengthy history of alcohol use since the age of 16 and admits to having a serious drinking problem. PSR ¶ 51. The defendant also reports that he sold cars, worked at a car wash, and sold drugs while living in Honduras. PSR ¶¶ 53-54.

**C.      A Sentence Within the Guidelines Serves the Factors of § 3553**

1. Seriousness of the Offense; Provide Adequate Punishment

This factor supports a significant sentence.  The defendant, a Honduran drug trafficker, worked for the notorious Los Cachiros DTO—one of the most powerful DTO's in Honduras.  Few DTO's in the world, much less Central America, transported as much cocaine as the Los Cachiros did in the relevant period.  By controlling large stretches of jungle territory on the northern coast of Honduras, the Los Cachiros DTO utilized aircraft as its primary method of importing cocaine from Venezuela to Central America.  In order to facilitate its aerial operations, the Los Cachiros DTO leadership relied on Medina, amongst others, to serve as a middle manager due to his intelligence, logistical skills, and knowledge of aircraft.  By participating in the preparation of aircraft to carry enormous quantities of cocaine, negotiating the purchase of large amounts of cocaine from sources of supply, and assisting in the landing of drug-laden aircraft, Medina engaged in drug trafficking at the highest levels.

The seriousness of the offense involving Medina lies in the magnitude of the cocaine transported.  On the one flight at issue, Medina and his co-conspirators transported 1,025 kilograms of cocaine.  In sheer numbers, this translates to millions of individual doses and tens of millions of dollars on the street.  By participating in almost every aspect of the aerial drug trafficking business, Medina assisted in the movement of enormous amounts of cocaine for the DTO.

For all these reasons, the United States asks the Court to consider the serious nature of these charges and sentence the defendant to 262 months imprisonment.

2.   <u>Need to Deter Future Criminal Conduct</u>

A sentence of 262 months will ensure that the defendant fully appreciates the gravity of his conduct in this case. In addition, a sentence of 262 months will also significantly deter future criminal conduct by others, such as aircraft dealers, negotiators, pilots, ground crew members, sources of supply, and drug traffickers, who are interested in using United States aircraft to transport drugs across the world. This case should send a clear signal to the drug trafficking community that the United States will not tolerate the use of its aircraft to further the distribution of illegal narcotics.

3.   <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

To be sure, the sentence imposed on Medina should take into consideration the need to protect the public. Due to his involvement in a conspiracy to transport 1,025 kilograms of cocaine via aircraft, Medina's actions have severely harmed the public. Not only did Medina profit by helping move millions of doses of cocaine from its source of supply to countless end users, he empowered a ruthless DTO that controlled much of the Honduran cocaine supply between 2011 through 2014.

As this Court is well aware, cocaine trafficking is an extremely violent trade that has led to the deaths of thousands of individuals over the last several decades. Violence is a necessary tool for traffickers to maintain supremacy and control of their distribution networks. One must look no further than the assassination attempt by the Los Cachrios on Medina's life to understand the stakes at play in this criminal underworld. Although largely decimated as an organization, the Los Cachiro's reign of terror was no different than many other DTOs in that it has destroyed countless numbers of lives in both its proclivities for violence and its large scale distribution of

narcotics. Medina's membership in such an organization only supported these efforts. Therefore, a sentence of 262 months is appropriate to protect the public from the defendant's future criminal behavior.

### 4. Need to Avoid Unwarranted Disparities

The defendant's activities fall within a range of conduct not typically seen by this Court. Based on the enormous drug weight involved in the conspiracy, the defendant's prominent organizational role, and his skillset within the DTO, the defendant's case is certainly unique. Coupled with this factual uniqueness, the relative rarity for which 21 U.S.C. § 959(b) is used to prosecute international drug traffickers, makes comparison of the defendant's case with others exceedingly difficult. However, by imposing a sentence of 262 months, the low end of the applicable guideline range, the appropriate balance between the other § 3553(a) factors and any potential unwarranted disparities will be reached.

Therefore, a sentence of 262 months is appropriate in this case to avoid unwarranted disparities between his sentence and the sentence of a like-positioned defendant.

### III. Conclusion

For the reasons stated above, the United States submits that a sentence of 262 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

_____/s/_____
Erik S. Siebert
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Email: erik.s.siebert@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of February 2019, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to the following:

> Ali Amirshahi, Esquire
> 101 Shockoe Slip
> Suite O
> Richmond, VA 23219

_____/s/_____

Erik S. Siebert
Virginia Bar No. 79057
Assistant United States Attorney
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: erik.s.siebert@usdoj.gov
